RECEIVED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEP 19 2022

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case Number 19-20652
    Honorable David M. Lawson

KATHERINE PETERSON,

Crim: 22-621 (MAS)

    Defendant.
_____/

### OPINION AND ORDER GRANTING DEFENDANT PETERSON'S MOTION TO SEVER AND TRANSFER VENUE

    The grand jury charged Katherine Peterson and four others with a health care and wire fraud conspiracy as a result of a scheme that involved improperly refilling prescriptions by mail and unlawfully billing Medicare for the cost. Much of the criminal conduct perpetrated by the codefendants took place in Michigan, although the activity spanned several other states as well. However, Peterson is alleged to have committed overt acts solely in New Jersey, where she lives. Arguing that she is a peripheral defendant, and that she would incur substantial hardship having to attend a lengthy trial in this district, Peterson has moved to sever her case from the codefendants' and transfer the trial of her severed case to a district close to her home.

    The circumstances of this case are markedly different than when Peterson filed her motion, which predated the onset of the COVID pandemic. Three codefendants have pleaded guilty, one who was identified as a minor participant in the conspiracy. The government has acknowledged that Peterson's roll is even less substantial. Peterson's personal difficulties have not improved, and now her lawyer has identified a personal hardship that will prevent him from attending a trial away from his home. Peterson has demonstrated a sufficient basis to sever her case from the remaining codefendant and to transfer it to the District of New Jersey. Her motion will be granted.

I.

The grand jury returned an indictment charging five individual defendants with conspiring to operate a network of affiliated pharmacies through holding companies designed to obfuscate the culpability of the true owners of the entities in an elaborate scheme of healthcare fraud. The holding companies were A1C Holdings, LLC ("A1C") and All American Medical Supplies, LLC ("AAMS"), which were organized and had offices in Florida. Those entities owned seven pharmacies located in Georgia, Kansas, Michigan, Missouri, Tennessee, Texas, and Virginia, which dispensed most or all of the prescription products that they delivered through the mail. Defendant James Letko, a resident of New Jersey, was the CEO of A1C, and defendant Steven King, a resident of Florida, was A1C's Chief Compliance Officer. The Michigan pharmacy allegedly involved in the scheme was Great Lakes Medical Pharmacy d/b/a All American Medical Pharmacy ("AAMP"). Defendant Rami Lazeki, a resident of Wayne County, Michigan, was the Pharmacist in Charge for AAMP. Defendants Patricia Flannery and moving defendant Katherine Peterson, both residents of New Jersey, were A1C employees.

According to the indictment, defendants Letko and King submitted credentials and applications to Medicare benefit managers including CVS Caremark and Express Scripts to procure authorization for A1C and AAMP to submit claims for prescription benefits. Peterson allegedly assisted them. Defendant Letko was the true owner of all the pharmacies involved in the scheme, but the defendants falsely represented that other persons were the owners to conceal Letko's involvement, in part because Letko had been implicated in prior civil enforcement proceedings for healthcare fraud. Among other things, the indictment alleges that Peterson was identified as the owner of Hudgins Pharmacy, Inc., which operated in Virginia.

The applications for all of the pharmacies also falsely represented that they were retail storefront operations, when in fact they filled all of their prescriptions through the mail, even though they were not authorized to submit claims for mail-order prescription benefits. The pharmacies submitted large numbers of benefit claims for products that were shipped to recipients without their consent, in some cases long after the patient was deceased. Despite numerous complaints from recipients and their families, the defendants continued for years sending out prescription items and billing Medicare. In some cases, the defendants offered to waive co-payments that they were required to collect from patients in order to persuade recipients or their family members to accept medically unnecessary items. In Counts II through VI of the indictment, the government identified five allegedly fraudulent claims that were submitted by defendant Lazeki within the Eastern District of Michigan.

According to a declaration by defendant Peterson that was submitted with the original motion to sever her case and to change venue, she was then 33 years old and a single mother of a four-year-old child. She lives in Milford, New Jersey, and she previously worked as an hourly employee of A1C; however, she attested that she expected soon to be unemployed because A1C ceased operations as a result of this prosecution. Peterson has been treated by a psychiatrist since 2014 and reported that she currently takes prescribed medications for anxiety, depression, and ADHD. She asserts that before her arraignment in this case she traveled to the Eastern District of Michigan only once, for a week-long training program conducted by AAMP, but she left after two days because of family obligations.

In her supplemental brief, the defendant reports that she remains a single mother with a (now) seven-year-old daughter who attends school five days per week. The defendant works from home "as much as possible" because she cannot afford the $550-per month expense of after school

childcare. On days when she cannot meet her daughter at the school bus upon her return home at 2:50 p.m., the defendant's mother, brother, or sister-in-law walk down the street to meet the child. During the summer, the child stays with her grandmother. The grandmother, however, is 69 years old and "suffers chronic health problems," which the defendant says prevent her from being able to care for a young child "24/7 for six to eight weeks." The defendant's father is 63 years old, "has back problems," and works full-time in a plumbing business. The defendant's brother "lives nearby" but "works full time and is otherwise busy helping care for his own children," who range in age from three months to four years.

After a lengthy unemployment period, the defendant secured a job where she works part-time, three days in office and one day at home each week, from 9:30 to 5:30. She is paid $20 per hour but does not receive any benefits or vacation time. She has only $300 in savings and pays out of pocket for medical expenses because she cannot afford health insurance. She presently lives with her parents and pays them $1,200 per month to cover rent and utilities. She has additional expenses of $165 per month for a car payment, $167 per month for car insurance, and a $500-per-month payment on credit card debt of approximately $13,000. She says that she lives paycheck to paycheck and has no reserve to cover unexpected pay gaps or large expenses.

In another twist, the defendant's attorney reports that his circumstances also have changed, because during the pandemic his spouse developed severe anxiety and has had unpredictable suicidal inclinations. He has been unable to leave her alone overnight for more than two years due to concerns about her mental health and well-being. Counsel indicates that if the trial is held in Detroit, he will be unable to represent the defendant at trial.

The defendant argues that the factors of convenience (for her and her lawyer), the financial burden that disruption of employment would place on her, and the inability to continue with her

retained counsel of choice all weigh heavily in favor of a transfer of venue. She argues that the Court should sever her case from the now-single remaining codefendant because she is accused at most of being a peripheral player in the conspiracy; because only a "handful" of witnesses identified by the government have given statements that directly implicate her; a separate trial of the charges against her alone would be significantly shorter; because of her personal family circumstances, she could not be present for the entire consolidated and lengthier trial; and because her defense witnesses reside in New Jersey and Pennsylvania and would not be available to attend a trial in Detroit, she would be deprived of her right to call them. Once severed, Peterson argues, her case should be transferred to either the District of New Jersey or the Eastern District of Pennsylvania because that's where she is located, her contacts with Michigan are markedly attenuated, at least 11 of the government's witnesses are located in Eastern Pennsylvania and New Jersey, separation from her daughter for a lengthy trial would create a hardship, and now, because of her lawyer's personal family challenges, she would have to get a new one.

The government initially objected to severance and transfer, noting that the primary reason the case was indicted in this district was because the bulk of the conduct constituting the fraud occurred at one pharmacy located within the district, and the investigation thus was led by agents located here. It does not appear, though, that Peterson is alleged to have any connection to the Michigan pharmacy. The government also points out that Peterson traveled to Michigan during the conspiracy for a training session, although she only remained for two days. The government also believes that Peterson's personal and employment life would be disrupted equally by a trial regardless of the venue, and the financial impact of trial would be the same if the case were tried in either district. The government's witnesses and many of the documents are located in Michigan, and the difference in the relative time to trial and efficiency of the dockets in the competing

districts is negligible. Finally, the government contends that Peterson has not identified any prejudice that could arise from a joint trial, and the expense on the government of separate trial favors joinder.

II.

A.

The grand jury may charge two or more defendants in a single indictment if they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). But "[i]f the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Severance is an appropriate remedy "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

No one questions the validity of the initial joinder of the five defendants in the indictment. They all are charged with participating in the same conspiracy, and the cases against them "involve[s] substantially overlapping evidence that will permit joint proof at trial." Andrew D. Leipold, 1A *Wright & Miller's Federal Practice & Procedure* § 145 (5th ed. 2020); *see also United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997) ("[T]he primary purpose of this kind of joinder is to insure that a given transaction need only be proved once."). Peterson argues trial of her case should be severed from the now only remaining defendant because her alleged involvement in the conspiracy is minimal compared to his, and her right to be present at trial would be compromised because it would be financially burdensome for her to attend a trial in Detroit.

Based on information in the record coming from statements at guilty plea hearings of the codefendants, it appears that Peterson's alleged involvement in the conspiracy was confined to her work as a paid employee of A1C Holdings in New Jersey where she lived. She allegedly helped submit credentialling paperwork to the Pharmacy Benefits Managers (PBMs), and she was named as the nominal owner of one of the pharmacies located in Virginia. It is not clear what else she is alleged to have done. At her guilty plea hearing, codefendant Patricia Flannery said that her involvement consisted of finding other pharmacies that would refill prescriptions for Lidocaine ointment when PBMs cancelled contracts with other pharmacies owned by codefendant James Letko. The government represented at that hearing the defendant Peterson's involvement was even more minimal than that.

By contrast, codefendant Steven King is alleged to have been the chief compliance officer of A1C and intimately involved in the fraudulent scheme. Surely, the evidence against him at trial would be more extensive and constitute the bulk of the proof presented to the jury.

But the so-called spillover effect of the volume of evidence of a codefendant generally will not by itself justify severance "unless there is a substantial risk that the jury could not compartmentalize or distinguish between the evidence against each defendant." *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993) (quoting *United States v. Williams*, 711 F.2d 748, 751 (6th Cir. 1983)). Peterson has not argued persuasively that such a risk is present here.

Nonetheless, prejudice requiring severance under Rule 14(a) can occur if "a joint trial would compromise a specific trial right of one of the defendants." *Zafiro*, 506 U.S. at 539. In this case, the right compromised is Peterson's right to attend the full trial itself. The defendant has a right to attend "every trial stage." Fed. R. Crim. P. 43(a)(2). That right "is rooted in the Due Process Clause (Fifth Amendment) and the Confrontation Clause (Sixth Amendment). *United*

*States v. Hills*, 27 F.4th 1155, 1187 (6th Cir. 2022) (quoting *United States v. Taylor*, 489 F. App'x 34, 43 (6th Cir. 2012) (citing *United States v. Gagnon*, 470 U.S. 522, 526-27 (1985)).

Peterson has argued persuasively that attending a lengthy trial in Michigan would create a substantial hardship for her because of her personal circumstances. She is a single mother with sole custody of her seven-year-old daughter. She cannot afford to pay for childcare. After a lengthy unemployment period, Peterson secured a job where she works part-time, three days in office and one day at home each week, from 9:30 to 5:30. She is paid $20 per hour but does not receive any benefits or vacation time. She has only $300 in savings and pays out of pocket for medical expenses because she cannot afford health insurance. She presently lives with her parents and pays them $1,200 per month to cover rent and utilities. She has additional expenses of $165 per month for a car payment, $167 per month for car insurance, and a $500 per month payment on credit card debt of approximately $13,000. She says that she lives paycheck to paycheck and has no reserve to cover unexpected pay gaps or large expenses.

The government estimated that it would need six weeks to present its proofs at trial. That estimate no doubt has been reduced due to the guilty pleas of three defendants. But the conspiracy allegations against the remaining central defendant likely will take more than two weeks to develop. The government argues that the defendant overstates the hardship, asking why her family would not be able to care for her child and suggesting that if Peterson is tried in New Jersey or Pennsylvania, the demands for childcare would be the same. It says that her initial concern about her employment should not be considered because she was likely to lose her job at the time when A1C stopped operations. It also contends that the court in this district is equally as accessible as a court in eastern Pennsylvania or New Jersey, since Detroit is a mere 90-minute flight from Peterson's home, and the New Jersey and Pennsylvania courthouses are an hour's drive from her

home. Those arguments, however, ignore the reality of the demands that the defendant must meet daily in her personal life. She must care for her child after school, it would be impractical for her to commute daily from New Jersey to Detroit, and she could not cover those expenses even if the logistics were feasible. The defendant has secured a part-time job, and the disruption of her employment would be both unfortunate and worthy of concern that after a lengthy period of unemployment she has managed to secure stable work. The absence of any benefits or leave time that would cover her trial attendance is troubling and no doubt will cause significant financial hardship for her and her daughter.

And there is an added difficulty that has arisen with her attorney, Mark Berman, who, for reasons explained earlier, cannot be away from his home over night and therefore could not attend a trial in Detroit. Requiring Peterson's case to be tried in Detroit, therefore, would deprive her of Mr. Berman's representation. The Sixth Amendment affords a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. "An essential element of this right is the right to have counsel of one's choice." *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) (citing *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144 (2006)). Although that right is not absolute, there is nothing in this record that suggest any good reason why Peterson should not have her own lawyer represent her. He has been her attorney of record over the three-plus years this case has been pending. The discovery has been voluminous, and the latest, non-COVID delay was caused by a late disclosure of thousands of records by the government, which had to be reviewed after the government's filter team went through them. Losing Mr. Berman over mere logistical complications no doubt would "compromise a specific trial right" that Peterson enjoys.

For these reasons, the Court will sever Peterson's case from the remaining defendant's so that it may be trial separately.

B.

For the same reasons, venue of Peterson's severed trial will be changed to the District of New Jersey, where she and her attorney reside. "Under the Federal Rules of Criminal Procedure, a criminal defendant may move for a change of venue on two grounds: if the defendant faces prejudice such that [s]he cannot receive a fair and impartial trial; or if it is more convenient for the parties and witnesses that the forum be changed, and such a change is in the interest of justice." *United States v. Jamal*, 246 F. App'x 351, 368 (6th Cir. 2007) (citing Fed. R. Crim. P. 21(a), (b)). In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964), the Supreme Court suggested several factors for courts to consider when faced with a request for a venue change, including the location of witnesses, the location of documents and records, the expense to the parties, and the location of counsel. *Id.* at 245-46.

The government's main arguments against transferring venue were made when the case included all five defendants, and the prospect of changing venue on Peterson's request would have entailed moving the entire case to the east coast. The government has not taken the opportunity to supplement its response to address the case in its present posture, except to say that its arguments have not changed. The concerns over transferring are substantially diminished when only the case against Peterson will be transferred. Of course, the government identifies as a valid counterweight against transfer the reality that much of the evidence of a conspiracy will have to be presented at two separate proceedings. But the evidence, including testimony by the government's witnesses who have investigated this nationwide conspiracy, conveniently can be presented in a federal court

in New Jersey as well as in Michigan. And the potential abridgment of Peterson's trial rights, discussed above, weighs heavily in favor of transfer.

III.

Defendant Katherine Peterson has satisfied the requirements of Federal Rule of Criminal Procedure 14(a) for severance of her trial from that of the remaining codefendant on the indictment in this case. She also has demonstrated that it is more convenient for the parties that the forum be changed, and that such a change is in the interest of justice.

Accordingly, it is **ORDERED** that defendant Katherine Peterson's motion to sever and transfer venue (ECF No. 63) is **GRANTED**.

It is further **ORDERED** that the trial of defendant Peterson is severed and will be tried separately from that of the remaining codefendant.

It is further **ORDERED** that the Clerk of Court shall **TRANSFER** the case of defendant Katherine Peterson, **ONLY**, to the District of New Jersey, Trenton Division, for trial.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date:   September 19, 2022