**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 22-621 (MAS) |
| - vs – | **MOTION FOR APPOINTMENT AS CJA COUNSEL, APPROVAL OF INTERIM BILLING, AND AUTHORIZATION TO USE ADDITIONAL ATTORNEY** |
| KATHERINE PETERSON, | |
| Defendant. | |

Defendant Katherine ("Katie") Peterson, through her attorneys Hartmann Doherty Rosa Berman & Bulbulia, LLC (Mark A. Berman, Esq., appearing), hereby moves for entry of an Order appointing Mr. Berman as counsel under the Criminal Justice Act of 1964 ("CJA"), approving interim billing, and authorizing appointed counsel to be assisted by an additional attorney at his firm in preparing and trying this case, at 80% of the CJA rate.  In support of this application, Defendant relies upon the CJA 23 separately submitted and upon the following declaration of counsel:

1)      Katie Peterson is a 36-year old, single mother of a 7-year old daughter.

2)      She graduated from high school but does not have a college degree.

3)      Ms. Peterson's daughter's father is not a regular presence in her life and does not assist in caring for their child  or provide regular child support.

4)      Ms. Peterson currently works as a receptionist for a financial advisor in Clinton, New Jersey.

5)      Her monthly pay net of taxes is approximately $2,600.

6)      She has approximately $200 in savings, about $7,900 in a 401(k) account, and no other assets of substantial value.

7)      She drives a 2014 Mitsubishi Outlander with 136,000 miles; she is still paying the car loan on the vehicle.

8)      Ms. Peterson lives with her parents, pays them rent, contributes toward utilities, and helps the father of her daughter pay his rent.

9)      She lives paycheck to paycheck,  has never paid her own legal fees in this matter, and cannot afford to pay for legal counsel now.

10)     Rather, undersigned counsel began representing Ms. Peterson over four years ago, in January 2019, when she received a letter from the United States Department of Justice informing her that she was a target of an investigation being conducted in the Eastern District of Michigan into the affairs of her then-employer, A1C Pharmacies ("A1C") and its owner, Co-Defendant James Letko.

11)     Ms. Peterson was a low-level manager at A1C.

12)     A1C provided counsel to her and other of its employees in connection with the Eastern District of Michigan grand jury investigation and a related federal investigation that was being conducted contemporaneously in the District of New Jersey.

13)     Upon information and belief, A1C had insurance coverage through Markel Corporation that, initially, provided coverage of defense costs.

14)     After an indictment was returned in the Eastern District of Michigan, and after counsel had already entered an appearance on behalf of Ms. Peterson in the Eastern District of Michigan with the expectation that counsel's legal fees would be paid, Markel refused to pay attorney's fees already owed to multiple law firms and commenced a declaratory judgment action in federal court in Florida seeking a declaration absolving it of any responsibility for paying future defense costs.

15)     That lawsuit eventually was settled with Markel paying a lump-sum amount that was first allocated among the various defense counsel to pay amounts previously owed in connection with pre-indictment representation.  The remainder was allocated with 62.5% being paid to counsel for Defendant James Letko because it was anticipated that his attorneys would be taking the lead role in preparing and defending this case at trial, as well as paying for shared defense expenses (most significantly, the web-based document management application necessary to review and organize the substantial electronic discovery produced by the government).

16)     Previously, the government provided defense counsel with a list identifying over 28 witnesses it intends to call at trial.

17)     On August 23, 2022, Defendant Letko entered a guilty plea and now will be a cooperating witness against Ms. Peterson, which was not anticipated at the time of the insurance settlement.

18)     Consequently, Ms. Peterson's counsel now will be taking the lead in preparing the defense of this entire case, including the cross-examination of every government witness, which was not anticipated at the time of the insurance settlement.

19)     In addition, after settlement of the insurance matter, the scope of discovery produced by the government has expanded exponentially.  In particular, the government belatedly produced to defense counsel an immense amount of discovery from the related District of New Jersey federal criminal investigation, which was not anticipated at the time of the insurance settlement.

20)     In addition, the federal court in Michigan required multiple rounds of briefing on Ms. Peterson's (ultimately successful) motion to transfer/sever her case, which was not anticipated at the time of the insurance settlement.

21)     In addition, because Defendant Stephen King will proceed to trial in Michigan before Ms. Peterson's trial, counsel will need to review and incorporate the trial transcripts and exhibits from the King trial into counsel's trial preparations, which was not anticipated at the time of the insurance settlement.

22)     The government in this case has produced more electronic discovery, and FBI 302s, than in any other health care fraud matter counsel has handled over the past 30 years (and counsel has tried several health care fraud matters).  Preparing for trial will be uniquely time consuming and, now, will not be divided among multiple co-defendants' attorneys.  Therefore, counsel will require the assistance of another attorney at counsel's firm to prepare for trial.

23)     Presently, there are no insurance settlement funds remaining to pay for counsel's continued representation of Ms. Peterson.

24)     Candidly, even if the Court denies this application, counsel will continue to represent Ms. Peterson and not seek to be relieved. Undersigned counsel has never abandoned a client because of an inability to pay and does not plan on starting now.  None of the circumstances set forth above are the fault of Ms. Peterson.

25)     Nevertheless, because the firm has financial obligations to its employees and vendors, the lack of any payment would inevitably impact the amount of time counsel can devote to preparing this matter for trial.

26)     Preparing this case for trial will be a significant undertaking in terms of the quantity of material that has to be reviewed, understood, and categorized so that it can be used effectively at trial.

27)     Therefore, appointment of counsel, and permission to utilize the assistance of another attorney at 80% of the CJA rate, is necessary to ensure that Ms. Peterson is afforded the effective assistance of counsel to which she is constitutionally entitled in this complex matter.

28)     Although a defendant seeking the appointment of counsel is not typically allowed to select the attorney appointed to represent her, undersigned counsel – who has been a CJA Panel member in the District of New Jersey for about 20 years  – has been representing Ms. Peterson for over four years and has developed a strong relationship of trust with her. Indeed, the attorney-client relationship that exists in this case was an important consideration in Judge Lawson's decision to transfer the case to the District of New Jersey for trial. *See* 9/19/22 E.D. Mich. Opinion at 9 ("Requiring Peterson's case to be tried in Detroit, therefore, would deprive her of Mr. Berman's representation.... He has been her attorney of record over the three-plus years this case has been pending.  The discovery has been voluminous, and the latest, non-COVID delay was caused by a late disclosure of thousands of records by the government, which had to be reviewed after the government's filter team went through them.  Losing Mr. Berman over mere logistical complications no doubt would "compromise a specific trial right" that Peterson enjoys."). Consequently, continued representation is warranted in the interest of justice and judicial economy.

For these reasons, counsel respectfully asks the Court to appoint undersigned counsel to represent Defendant Peterson under the CJA, to approve interim billing, and to allow counsel to utilize the assistance of a second attorney at the firm to assist in preparing and trying this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 23, 2023.

Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
433 Hackensack Avenue, Suite 1002,
Hackensack, New Jersey 07601
t: 201-441-9056
e: mberman@hdrbb.com

*Attorneys for Defendant
Katherine Peterson*