Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201-441-9056
e: mberman@hdrbb.com
*Attorneys for Defendant*
*Katherine Peterson*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 22-0621 (MAS) |
| - vs — | |
| KATHERINE PETERSON, | **DEFENDANT'S OPPOSITION** |
| | **TO THE GOVERNMENT'S** |
| Defendant. | **MOTIONS IN LIMINE** |

The government has moved *in limine* for entry of an Order prohibiting Defendant Katherine Peterson from: (1) offering evidence of any legitimate medical billings, legitimate prescriptions, or other good conduct as a defense to the charge in the Indictment, (2) blaming Medicare or its contractors for the fraud, and (3) "making any argument or presenting any evidence concerning which other persons have or have not been charged in this case or other cases." Defendant takes no position with respect to motions *in limine* Nos. 1-2 as defense counsel does not presently intend to offer evidence of legitimate billings or to blame Medicare or its contractors for the fraud alleged by the government. Defendant objects, however,

- 1 -

to the government's overbroad and unconstitutional request for an order categorically prohibiting counsel from "making any argument or presenting any evidence concerning any other persons who have or have not been charged by the United States."

In *United States v. White*, 692 F.3d 235 (2d Cir. 2012), the Second Circuit rejected the categorical ruling requested by the government here (and the specific cases upon which the government relies). Indeed, such a categorical prohibition would violate Ms. Peterson's constitutional right to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Due process requires that criminal defendants be afforded a meaningful opportunity to present a complete defense.") (internal quotation marks omitted). As the Second Circuit explained in *White*:

> [W]e find that categorical exclusion "infringe[s] upon a weighty interest of the accused," *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998), and threatens "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing," *United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). We hold, therefore, that the Government's charging decisions may be proper subjects for cross-examination and argument if otherwise admissible.

692 F.3d at 245-46. Although the Second Circuit made clear that it was "not creating a *per se rule* of admissibility for charging decisions," *id.* at 246, it "reject[ed] an inflexible approach that evidence of the Government's charging decisions is never

admissible by a criminal defendant," holding that "[d]istrict courts may not automatically exclude such evidence without an inquiry into its relevance and probative value." *Id.*

Defendant expects that the government will present testimony at trial from witnesses who were interviewed during the two contemporaneous government investigations – one by the U.S. Attorney's Office for the District of New Jersey and one by the DOJ Health Care Fraud Task Force in Detroit, Michigan – into pharmacies run by James Letko and Jon Letko.  The DNJ investigation resulted in no indictments but the DOJ investigation resulted in the prosecution of James Letko (CEO of A1C), Steven King (Compliance Officer), Rami Lazeki (Pharmacist-in-Charge in Michigan), Patricia Flannery (Ms. Peterson's superior), as well as Ms. Peterson, who was a low-level hourly employee. Tens of employees who were involved in the alleged conduct were interviewed by both offices, under proffer agreements, including Ms. Peterson's own brother, who worked for Jim Letko and who – like his sister –served as manager of one of the Letko pharmacies.

This context makes clear two things: *First*, it is entirely appropriate for defense counsel to challenge witnesses' credibility by cross-examination about their having been interviewed by the government, the limited immunity afforded to them by a proffer agreement, the importance to them of that proffer immunity, their fear of being prosecuted, the fact that they were not ultimately prosecuted by the

government, their desire to continue to avoid prosecution by the government, and whether their testimony has been affected by the government's decision not to charge them. Such cross-examination, which is relevant to the jury's assessment of witness credibility, would be prohibited by the government's requested order, but which the Supreme Court recognizes as essential. *Davis v. Alaska*, 415 U.S. 308, 316-18 (1974) ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination," and holding that "[t]he claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the witness]'s vulnerable status as a probationer, ... as well as of [the witness]'s possible concern that he might be a suspect in the investigation.") (internal citations omitted). *Second*, it may well be that, during the trial, evidence is elicited by the government that would make it appropriate for defense counsel to question witnesses – for reasons other than credibility – about whether they had been indicted by the government. That is impossible to predict without hearing the witnesses' testimony. And, for the reasons set forth by the Second Circuit in *White*, *supra*, it would be error for the Court to categorically prohibit such examination (and any ensuing arguments) before trial commenced and without hearing any testimony.

For purposes of clarity, defense counsel does not intend to include in its opening statement any argument akin to "other similarly situated people were not

charged by the government and, therefore, Ms. Peterson should not have been charged." But defense counsel *does* intend to cross-examine witnesses with respect to the credibility considerations outlined above, and also to take advantage of any door that might be opened by the government (through the testimony of its witnesses or government argument), depending on the course of the trial.

The Order the government seeks would deny Defendant's constitutional right to confront witnesses and present a defense; at best, its request is premature. Therefore, the Court should deny the government's motions *in limine*. *See United States v. Yang*, No. 16-CR-00334-LHK, 2019 U.S. Dist. LEXIS 185537, at *18, 2019 WL 5536213 (N.D. Cal. Oct. 25, 2019) (relying on *White* and denying without prejudice the government's motion in the limine regarding charging decisions, ruling that "[t]he Government may object to specific arguments or statements. Defense counsel should give the Government and the Court fair warning when they believe the issue is about to present itself at trial, so the Court can address it outside the presence of the jury."); *United States v. Williams*, No. 3:13-cr-00764-WHO-1, 2017 U.S. Dist. LEXIS 160102, at *21-22, 2017 WL 4310712 (N.D. Cal. Sep. 28, 2017) ("I will not issue a blanket ruling precluding such evidence or argument. But the government may raise its objection at the appropriate time during trial, at which point I will rule on the admissibility of specific evidence or the propriety of a particular argument.").

Respectfully submitted,

Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201-441-9056
e: mberman@hdrbb.com

*Attorneys for Defendant
Katherine Peterson*

Dated: May 19, 2024